UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KAREN S., | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )   No. 2:19-cv-00522-JHR |
| | ) |
| ANDREW M. SAUL, | ) |
| *Commissioner of Social Security,* | ) |
| | ) |
|     *Defendant* | ) |

### *MEMORANDUM DECISION*[1]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found that the plaintiff had no severe impairments. The plaintiff seeks remand on the bases that the ALJ erred in determining that (i) her medically determinable impairments of depressive disorder and post-traumatic stress disorder (PTSD) were not severe and (ii) her generalized anxiety disorder (GAD) and attention deficit disorder (ADHD), neither of which the ALJ deemed medically determinable impairments, were not severe. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 9) at 4-17. I conclude that the ALJ's determination that the plaintiff had no severe mental impairment is supported by substantial evidence and, accordingly, affirm the decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 13.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, Finding 1, Record at 18; that, through her date last insured (DLI), she had the medically determinable impairments of depressive disorder and PTSD, Finding 3, *id.*; that, through her DLI, she had no impairment or combination of impairments that significantly limited or was expected to significantly limit her ability to perform basic work-related activities for 12 months and, therefore, did not have a severe impairment or combination of impairments, Finding 4, *id.*; and that she, therefore, had not been disabled from her amended alleged onset date of disability, January 1, 2016, through her DLI, September 30, 2016, Finding 5, *id.* at 21.  The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I. Discussion

### A. Depressive Disorder and PTSD

The plaintiff alleges that the ALJ made three errors in determining that her depressive disorder and PTSD were not severe.  First, she argues that he erroneously applied the standard pertaining to whether a claimant's impairment(s) meet or equal Listing 12.00 (Mental

2

Impairments) of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, rather than considering whether "she had a medically determinable impairment that had more than a minimal effect on [her] ability to work." Statement of Errors at 5 (citation omitted).  Second, she faults the ALJ for relying on assessments by agency nonexamining consultants who did not have the benefit of review of the full medical record. *See id.* at 5-11.  Third, she asserts that the ALJ erred in assigning no weight to a United States Department of Veterans Affairs ("VA") disability ratings decision or the underlying evaluation performed by Kerry Kimball, Ph.D., in support of that decision. *See id.* at 11-12.

I find no error.  In any event, even if the ALJ had erred in one or more of these respects, the plaintiff "fails to identify the specific limitations imposed by [her] impairments, whether or not severe, that would have necessarily affected the outcome of her application for benefits," *Courtney v. Colvin*, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014), thereby falling short of demonstrating that any Step 2 error was harmful.

Turning to the first point, the ALJ did not inappropriately apply Listing 12.00.  Rather, he followed the special technique applicable to mental impairments, pursuant to which, once the commissioner determines that a claimant has one or more medically determinable mental impairment(s), he must rate the degree of resulting functional limitation in four broad areas of functioning. *See* 20 C.F.R. § 404.1520a(b)-(c).[2]  If the commissioner "rate[s] the degrees of [a claimant's] limitation as 'none' or 'mild,' [he] will generally conclude that [the] impairment(s) is not severe[.]" *Id.* § 404.1520a(d)(1).  In evaluating the severity of the plaintiff's mental impairments, the ALJ followed this process, determining that her impairments "caused no more

---

[2] The four areas are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

than 'mild' limitation in any of the [four] functional areas" and, hence, "were nonsevere." Record at 20 (citation omitted).

With respect to the plaintiff's second argument, while the ALJ did "rel[y] strongly upon" the findings of agency nonexamining consultants Thomas, Knox, Ph.D., and Brian Stahl, Ph.D., "neither of whom found sufficient evidence to establish a severe psychological impairment at the time of the date last insured," *id*., he did not err in doing so. He explained that Drs. Knox and Stahl "had the benefit of examining a significant amount of objective evidence relevant to the period at issue in 2016" and that he found "no persuasive, correlating data submitted in the interim to alter significantly the State agency's reasonable and comprehensive findings." *Id*.

At the outset of his decision, the ALJ further explained that, pursuant to the doctrine of *res judicata*, he did not evaluate "numerous duplicates of evidence already considered in [a] prior hearing" culminating in a different ALJ's January 5, 2016, decision denying benefits, which the plaintiff did not appeal. *Id*. at 15-16.

The plaintiff details evidence spanning the period from June 16, 2015, through September 20, 2016, that she maintains likely would have persuaded Drs. Knox and Stahl to find severe impairments of depressive disorder and PTSD had they seen them, including the December 12, 2015, Kimball evaluation. *See* Statement of Errors at 7-10. However, she does not challenge the ALJ's *res judicata* finding or make any effort to show how any records predating her amended alleged onset date of disability, whether considered in the prior ALJ decision or not, describe her condition during the relevant period.

In any event, the ALJ did not depend solely on the Knox and Stahl opinions in concluding that the plaintiff's depressive disorder and PTSD were not severe. He considered her activities of daily living, explaining:

4

> [D]uring the period at issue, the [plaintiff] had no cognitive or linguistic limitations, and she could and did maintain a small social circle, despite episodic interpersonal problems with her 2 [sic] adult children or her mother. She attended group therapy, and providers regularly characterized her as pleasant, cooperative, or with an improved mood, if sometimes anxious. Furthermore, she demonstrated no problems with self-care; routinely appearing at appointments aptly groomed, she could and did drive a car, ran errands, maintained an appointment calendar, shopped, prepared daily meals, and did household tasks.

Record at 20 (citations omitted). As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 10) at 9-10, the plaintiff does not separately challenge the ALJ's assessment of her activities of daily living, *see generally* Statement of Errors.[3]

This, in combination with the Knox and Stahl opinions, constituted substantial evidence that the plaintiff's depressive disorder and PTSD were nonsevere during the relevant period of January 1, 2016, through September 20, 2016. *See, e.g., Wing v. Berryhill*, No. 2:16-cv-00543-JDL, 2017 WL 3206941, at *2-3 (D. Me. July 28, 2017) (rec. dec., *aff'd* Aug. 15, 2017) (noting, in rejecting claimant's challenge to finding that he had no severe postpolio impairment as of his date last insured for benefits, that the ALJ relied not only on the opinions of agency nonexamining consultants "but also on his own analysis of other evidence of record shedding light on the [claimant]'s functional ability during the period at issue").

Turning to the third and final point, the plaintiff cites several decisions of this court in support of the proposition that a VA disability ratings decision is entitled to some weight. *See* Statement of Errors at 11-12 (citing *Belanger v. Berryhill*, No. 2:17-cv-00039-JHR, 2018 WL

---

[3] During rebuttal at oral argument, the plaintiff's counsel did raise, for the first time, a challenge to the ALJ's partial reliance on his client's activities of daily living. This point is waived. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

5

1144389 (D. Me. Mar. 2, 2018), *Hamm v. Berryhill*, 2:16-cv-00627-DBH, 2017 WL 4918514 (D. Me. Oct. 31, 2017) (rec. dec., *aff'd* Dec. 5, 2017), and *Flannery v. Barnhart*, No. 06-37-B-W, 2006 WL 2827656 (D. Me. Sept. 29, 2006) (rec. dec., *aff'd* Oct. 20, 2006)).  She argues that, accordingly, the ALJ erred in assigning no weight to the VA disability ratings decision or the underlying evaluation of Dr. Kimball and in failing to discuss his reasoning in any meaningful way, requiring remand.  *See id.*; Record at 21 (explanation by ALJ that, although he considered the VA disability ratings decision, including the December 2015 Kimball evaluation, "a disability decision by another governmental agency is based on that agency's rules and is neither dispositive nor binding upon the undersigned") (emphasis added by ALJ).

However, the cases on which the plaintiff relies predate new regulations stating, "in claims filed . . . on or after March 27, 2017, [the commissioner] will not provide any analysis in [his] determination or decision about a decision made by another governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits."  20 C.F.R. § 404.1504.  The plaintiff filed her SSD application on September 6, 2017, *see* Record at 15, as a result of which the new regulations govern, and the VA disability ratings decision was properly given no weight.

At oral argument, the plaintiff's counsel elaborated that the ALJ nonetheless erred in failing to supply any meaningful evaluation of the underlying Kimball evaluation, as required by 20 C.F.R. §§ 404.1513 and 404.1504.  He emphasized that Dr. Kimball had concluded that the plaintiff would have difficulty in such areas as establishing and maintaining effective work and social relationships and adapting to stressful circumstances, including in work settings.  *See* Record at 976.  Yet, the plaintiff does not make a persuasive argument that the ALJ erred.

Section 404.1504 provides that the commissioner "will consider all of the supporting evidence underlying" a VA disability ratings decision "in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504. In turn, the cited subsections of Section 404.1513 delineate four categories of evidence: (i) objective medical evidence, (ii) medical opinion, (iii) other medical evidence, and (iv) evidence from nonmedical sources, which are to be evaluated "according to the rules pertaining to the relevant category of evidence." *Id.* § 404.1513(a)(1)-(4). That the ALJ must "consider" such evidence, thus, does not necessarily mean he or she must expressly acknowledge and discuss it, depending on the category of evidence at issue.

While, as the commissioner notes, *see* Opposition at 4, an ALJ is required to discuss "medical opinion" evidence, *see* 20 C.F.R. § 404.1520c(b) (commissioner "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions . . . in [a claimant's] case record"), the Kimball evaluation is not a "medical opinion." Although Dr. Kimball identified areas in which the plaintiff would have difficulty, he did not indicate what she still could do despite her impairments or what specific limitations or restrictions her impairments imposed. *See* Record at 976; 20 C.F.R. § 404.1513(a)(2) (defining a "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions" in abilities that include the "ability to perform mental demands of work activities").

Finally, even if the plaintiff had succeeded on one or more of these arguments, remand would remain unwarranted because she fails to identify the specific limitations imposed by her depressive disorder and PTSD that would have affected the outcome of her application for benefits – a requirement at this level of review. *Wallace v. Astrue*, No. 2:10-cv-428-GZS, 2011 WL 4501065, at *2 (D. Me. Sept. 27, 2011) (rec. dec., *aff'd* Oct. 17, 2011).

The plaintiff asserts that "[t]here is support . . . in the record[,] as discussed supra," for hypothetical limitations posited to the vocational expert (VE) present at her hearing that the VE testified would preclude work, namely, (i) limitations to performing simple work without interaction with the public and with a need for a workspace that prevents seeing or interacting with coworkers, and (ii) an inability to maintain a regular work schedule, entailing leaving work early a couple of times a month or missing work a couple of times a month. Statement of Errors at 16-17. However, nothing in her prior discussion indicates that those specific limitations were assessed. *See id*. at 4-15.

The plaintiff also cites an opinion of James McElligott, Psy.D., her treating psychologist, that she would be off-task more than 25 percent of a workday and miss more than four days of work per month. *See id*. at 16 n.4; Record at 30. However, as she acknowledges, *see* Statement of Errors at 16 n.4, the McElligott opinion, dated April 24, 2019, was submitted for the first time to the Appeals Council, which found no "reasonable probability that it would change the outcome of the decision[,]" Record at 2. As the commissioner notes, *see* Opposition 6, in such circumstances, a claimant must show that the Appeals Council has "give[n] an egregiously mistaken ground for [its] action[,]" *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). The plaintiff neither acknowledges nor meets that standard, merely arguing, without elaboration, that the McElligott opinion is consistent with the VA disability ratings decision and Dr. Kimball's assessment. *See* Statement of Errors at 16 n.4.

At oral argument, the plaintiff's counsel also highlighted Dr. Kimball's assessment of a Global Assessment of Functioning (GAF) score of 50, which reflected a decline from an earlier

score of 62 and contributed to the VA's finding of disability. *See also* Statement of Errors at 9.[4] However, the ALJ expressly considered "GAF scores provided by clinicians from the VA[,]" deeming them "unpersuasive" on the bases that (i) "GAF scores are generally given little weight because they are 'snapshot' impressions and often do not correspond with the longitudinal evidence or even the narrative accompanying the score[,]" (ii) GAF scores "are not a proxy for work-related functioning, and consider factors unrelated to mental disability[,]" and (iii) "the utility of GAF scores as an assessment tool is questionable, as they have been removed from the DSM-V and are generally no longer used by mental health providers." Record at 21. The plaintiff's counsel did not explain how, if at all, the ALJ erred in discounting the GAF scores on these bases.

While there is no dispute the plaintiff was diagnosed with PTSD and depressive disorder, even with a medical diagnosis, a claimant must show that his or her impairment "significantly limited his [or her] ability to do basic work activity at the relevant time." *LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010). Accordingly, her bid for remand on this basis must be rejected.

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* (boldface omitted). A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

### B.  ADHD and GAD

The plaintiff, finally, challenges the ALJ's handling of her claimed impairments of ADHD and GAD, asserting that he wrongly determined her ADHD was controlled by medication and did not address her GAD diagnosis.  *See* Statement of Errors at 13-17.  With respect to both impairments, the plaintiff relies heavily on her own subjective allegations, as well as the VA disability ratings decision and the underlying evaluation by Dr. Kimball.  *See id.*

As the commissioner counters, *see* Opposition at 6, the plaintiff does not separately challenge the ALJ's partial discounting of her subjective complaints, *see* Statement of Errors at 13-17; Record at 19 (deeming plaintiff's "subjective statements about the intensity, persistence, and limiting effects of her symptoms inconsistent because the objective medical record fails to substantiate the dire level of dysfunction that she professes"), which is fatal to her bid for remand on that basis.  With respect to the VA disability ratings decision, as discussed above, the ALJ complied with the applicable regulation, 20 C.F.R. § 404.1504, in according it no weight.  With respect to the Kimball evaluation, as discussed above, the plaintiff has not shown that the ALJ erred in failing to provide a more meaningful discussion.  In any event, as discussed above, even if the ALJ erred in his handling of the plaintiff's ADHD or GAD, the plaintiff fails to identify the specific, work-related limitations resulting therefrom, *see, e.g. Courtney*, 2014 WL 320234, at *4, rendering any error harmless.

### II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 12th day of October, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge